UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
at ASHLAND

Civil Action No. 14-176-HRW

LARRY E. MAUK
O/B/O RANDY A. MAUK,                                               PLAINTIFF,

v.              **MEMORANDUM OPINION AND ORDER**

CAROLYN COLVIN,
COMMISSIONER OF SOCIAL SECURITY,                     DEFENDANT.

Plaintiff has brought this action pursuant to 42 U.S.C. §405(g) to challenge a final decision of the Defendant denying Randy Mauk's application for disability insurance benefits and supplemental security income benefits. The Court having reviewed the record in this case and the dispositive motions filed by the parties, and being otherwise sufficiently advised, for the reasons set forth herein, finds that the decision of the Administrative Law Judge is supported by substantial evidence and should be affirmed.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Randy A. Mauk, filed an application for Title II Disability Income Benefits and Title XVI Supplemental Security Income ("SSI") disability benefits on June 20, 2011, alleging an onset date of December 19, 2010 (Tr. 197-212). He alleged disability due to "seizures, depression and migraines" (Tr. 232). The application was denied initially on August 23, 2011 (Tr. 60-78), and upon reconsideration on October 17, 2011 (Tr. 106-111). Thereafter, Mauk filed a Request for Hearing. (Tr. 131-132). An administrative hearing was held in Huntington, West Virginia, with Administrative Law Judge Robert Bowling

presiding (Tr. 48-57). Mauk appeared with his attorney; the hearing was continued for purposes of allowing additional development of the record (Tr. 56-57). A second administrative hearing was convened by ALJ Charlie Paul Andrus ("ALJ") presiding (Tr. 31-48). Mauk again appeared with his attorney and offered sworn testimony. Vocational Expert ("VE") Gina Baldwin also appeared and testified.

At the hearing, pursuant to 20 C.F.R. § 416.920, the ALJ performed the following five-step sequential analysis in order to determine whether the Mauk was disabled:

Step 1: If the claimant is performing substantial gainful work, he is not disabled.

Step 2: If the claimant is not performing substantial gainful work, his impairment(s) must be severe before he can be found to be disabled based upon the requirements in 20 C.F.R. § 416.920(b).

Step 3: If the claimant is not performing substantial gainful work and has a severe impairment (or impairments) that has lasted or is expected to last for a continuous period of at least twelve months, and his impairments (or impairments) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is disabled without further inquiry.

Step 4: If the claimant's impairment (or impairments) does not prevent him from doing his past relevant work, he is not disabled.

Step 5: Even if the claimant's impairment or impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

The ALJ issued a decision finding that Randy Mauk was not disabled (Tr. 8-24). He was 36 years old at the time he alleges he became disabled. He has a high school education as has worked in various capacities for several tree-trimming companies.

At Step 1 of the sequential analysis, the ALJ found that Mauk had not engaged in

2

substantial gainful activity since the alleged onset date of disability (Tr. 13).

The ALJ then determined, at Step 2, that he suffers from seizures, cognitive disorder, anxiety and depression which he found to be "severe" within the meaning of the Regulations (Tr. 13 -15).

At Step 3, the ALJ found that Mauk's impairments did not meet or medically equal any of the listed impairments (Tr. 15). In doing so, the ALJ specifically considered Listings 11.00, 11.03, 12.02, 12.04and 12.06 (Tr. 15-17).

The ALJ further found that Mauk could not return to his past relevant work (Tr. 21) but determined that he had the residual functional capacity ("RFC") to perform simple work with no exposure to the public and no exposure to heights or dangerous machinery and only routine changes in the work setting (Tr. 17).

The ALJ finally concluded that these jobs exist in significant numbers in the national and regional economies, as identified by the VE (Tr. 41-47).

Accordingly, the ALJ found Mauk not to be disabled at Step 5 of the sequential evaluation process.

Notably, Mauk died in June 2014 due to hypertension and atherosclerosis cardiovascular disease (Tr. 512) impairments that were not alleged in his application (Tr. 232) or demonstrated to be severe impairments in the medical record that was before the ALJ (Tr. 11-24). Where a claimant dies before any payment of benefits under Title II is due, payment of the amount due is made to a qualified surviving spouse or, if none, to any qualified surviving children or parents (Mauk's father, Larry Mauk, is bringing this suit on his behalf (*see* Tr. 302)). *See* 42 U.S.C. § 404(d); 20 C.F.R. § 404.503(b). Because payment of benefits under Title XVI can only be paid to

3

a surviving spouse and he was divorced (Tr. 35), *see* 42 U.S.C. § 1383(b)(1)(A); 20 C.F.R. § 416.542(b), his death extinguished his SSI claim.

The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the final decision of the Commissioner.

Plaintiff Larry Mauk thereafter filed this civil action seeking a reversal of the Commissioner's decision. Both parties have filed Motions for Summary Judgment [Docket Nos. 9, 10 and 11] and this matter is ripe for decision.

## II. ANALYSIS

### A. Standard of Review

The essential issue on appeal to this Court is whether the ALJ's decision is supported by substantial evidence. "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). If the Commissioner's decision is supported by substantial evidence, the reviewing Court must affirm. *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). "The court may not try the case *de novo* nor resolve conflicts in evidence, nor decide questions of credibility." *Bradley v. Secretary of Health and Human Services*, 862 F.2d 1224, 1228 (6th Cir. 1988). Finally, this Court must defer to the Commissioner's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

B.   **Plaintiff's Contentions on Appeal**

Plaintiff contends that the ALJ's finding of no disability is erroneous because: (1) the ALJ erred in failing to include limitations in his controlling hypothetical question and his RFC to account for all of the severe impairments that he found to exist and (2) the ALJ failed to follow the requirements of SSR 96-7p and 20 C.F.R. §§404.1529(c)(3) and 416.929(c)(3) in determining Randy Mauk's credibility

C.   **Analysis of Contentions on Appeal**

Plaintiff's first claim of error is that the ALJ erred in failing to include limitations in his controlling hypothetical question and his RFC to account for all of the severe impairments that he found to exist. Although Plaintiff casts his assignment of error as a step-five challenge to the ALJ's reliance on vocational expert testimony in response to a posed hypothetical question, it is, as Defendant notes, actually a challenge to the ALJ's residual functional capacity assessment.

The responsibility for determining a claimant's residual functional capacity is reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(2), 404.1545.

Plaintiff takes issue with the ALJ's finding that, despite his history of seizures and depression, he had the residual functional capacity to perform simple work with no public contact or exposure to heights or dangerous machinery and only routine changes in the work setting (Tr. 17).

With regard to Mauk's seizures, the ALJ pointed out that the treatment notes of record showed that his seizure disorder was well controlled with medication (Tr. 19, *see* Tr. 338 ("Last seizure over 15 yrs [sic]"), 417 (last seizure two years prior), 477 (last "bad" seizure approximately five years prior), 487 (last seizure in 2007 and could count total number of

5

seizures "on one hand")). Dr. Lewis's notes indicated that Plaintiff was doing well (Tr. 19, *see* Tr. 342 ("[d]oing well"), 349 ("[d]oing generally well")). The ALJ also noted that Mauk reported that he continued to drive, indicating that his seizures were controlled (Tr. 19, *see* Tr. 35).

With regard to depression and anxiety, the ALJ noted that treatment records showed that Mauk's prescribed anti-depressant (Celexa) provided moderate relief and rapidly improved his depression (Tr. 18, *see* Tr. 467 ("[depression] has been rapidly improving"), 470 ("[depression] has been gradually improving")). Moreover, the ALJ pointed out that mental status examinations were largely normal (Tr. 19, *see* Tr. 490). Accordingly, the ALJ reasonably found that Mauk's complaints of disabling physical and mental limitations were not supported by the treatment notes of record. 20 C.F.R. § 404.1529(c)(4).

As for the various medical opinions in the record, it is clear from the hearing decision that the ALJ considered them in fashioning the RFC. In weighing the opinions, the ALJ discounted the opinions of Tony Goudy, Ph.D. and Sheila Emerson, M.A., both of whom evaluated Randy Mauk at the behest of his attorney.

Doctor Goudy's report indicated that Mauk complained of severe memory and concentration problems on Dilantin, as well as depression (Tr. 476-78). Goudy diagnosed cognitive disorder and adjustment disorder with depressed mood (Tr. 480). He opined that Mauk had marked limitations in performing in activities of daily living, moderate limitations in social functioning, and marked impairments in concentration, persistence, or pace (Tr. 480). Goudy also opined that Mauk had moderate limitations in using judgment; marked limitations in functioning, maintaining attention and concentrating, understanding, remembering, carrying out simple and detailed job instructions, and completing a normal work-day and work-week; and extreme

6

limitations in understanding, remembering, and carrying out complex job instructions (but otherwise had slight limitations) (Tr. 483-84).

In her report, Ms. Emerson noted a full scale IQ score of 63 and diagnosed anxiety and mental retardation (Tr. 493). Ms. Emerson opined that Mauk had a limited ability to sustain concentration, persistence, and pace and a very limited ability to follow multi-step instructions, adding that it would be challenging for him to maintain employment (Tr. 493). In a check-box style form, Ms. Emerson opined that he had moderate, marked, or extreme limitations in most areas of functioning (Tr. 495-96).

These opinions of extreme limitation in functioning are at odds with the other medical evidence in the record. For example, Megan L. Green, Psy.D., performed a psychological evaluation of Mauk in connection with his disability application (Tr. 431-34). She noted that he did not have a history of learning problems and was not experiencing depressive symptoms at the time of the evaluation (while he was on anti-depressant medication), but had experienced them in the past (Tr. 432-33). Dr. Green did not diagnose any mental disorders and noted that Mauk was not psychologically limited in his ability to function in an occupational capacity (Tr. 434).

In addition, state agency psychologist Mary K. Thompson, Ph.D., reviewed Mauk's medical records and did not find evidence of any severe mental impairments (Tr. 67). Two months later, another state agency psychologist Sharon Ames-Dennard, Ph.D., reviewed Mauk's medical records and agreed that he did not have any severe mental impairments (Tr. 86-87).

Similarly, state agency physician Carlos Hernandez, M.D., reviewed Plaintiff's medical records and found no evidence of any severe physical impairments (Tr. 85-86).

Moreover, the ALJ noted that the opinions of Doctor Goudy and Ms. Emerson were inconsistent with Mauk's own reports regarding his functioning, including that he could complete household chores, shop, drive, and pay bills (Tr. 20, *see* Tr. 238-45, 266-72).

The Court finds that The ALJ's decision to discount these opinions and the reasons the ALJ gave in doing so are reasonable and supported by the record. *See Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 440 (6th Cir. 2012) (unpublished) ("So long as the ALJ's decision adequately explains and justifies its determination as a whole, it satisfies the necessary requirements to survive [judicial] review.").

To the extent Plaintiff suggests that the ALJ substituted his lay opinion for any one doctor's opinion, he is incorrect. The ALJ did what he was charged with doing, to-wit, weighing the various opinions of record and assessing a residual functional capacity that was in line with the record as a whole.

As for the hypothetical posed to the VE, the questions posed complied with this circuit's long-standing rule that the hypothetical question is proper where it accurately describes a claimant's functional limitations. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779. (6th Cir. 1987). This rule is necessarily tempered by the requirement that the ALJ incorporate only those limitations which he or she finds to be credible. *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1235 (6th Cir. 1993).

Plaintiff's second claim of error is that the ALJ improperly evaluated Randy Mauk's credibility.

It is well established that as the "ALJ has the opportunity to observe the demeanor of a witness, (her) conclusions with respect to credibility should not be discarded lightly and should

be accorded deference." *Hardaway v. Secretary of Health and Human Services*, 823 F.2d 922, 928 (6th Cir. 1987).

The ALJ also found that Mauk's inconsistent statements detracted from the credibility of his claims (Tr. 18). *See* 20 C.F.R. § 404.1529(c)(4) (stating an ALJ must consider inconsistencies in the evidence). The ALJ pointed out that while he unequivocally testified that he had not done any work for pay since December 2010 (Tr. 37), a May 2011 urgent care treatment note showed that Mauk presented for treatment of a right hand injury sustained while doing "construction work" (Tr. 322-24). The ALJ also noted that, despite Mauk's claims that he quit working in December 2010 because he "started feeling more tired," he said in the same sentence that he left work at that time for "a job paying more" but it fell through and he could not get his other job back (Tr. 36). Additionally, as set forth above, he reported a differing seizure history to different providers, reporting to some that he had not had a seizure for 15 years and others that his last seizure was two years prior (*compare* Tr. 338, 417, 477, 487).

Given the inconsistencies in the record, the ALJ permissibly discounted Mauk's credibility.

### III. CONCLUSION

The Court finds that the ALJ's decision is supported by substantial evidence on the record. Accordingly, it is **HEREBY ORDERED** that the Plaintiff's Motion for Summary Judgment be **OVERRULED** and the Defendant's Motion for Summary Judgment be **SUSTAINED**. A judgment in favor of the Defendant will be entered contemporaneously herewith.

This 16th day of March, 2016.

Signed By:
Henry R. Wilhoit, Jr.
United States District Judge

9